**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49909**

| STATE OF IDAHO, | ) | Boise, October 2024 Term |
|---|---|---|
| | ) | |
| Plaintiff-Respondent, | ) | Opinion Filed: May 20, 2025 |
| | ) | |
| v. | ) | Melanie Gagnepain, Clerk |
| | ) | |
| CHADLEN DEWAYNE SMITH, | ) | SUBSTITUTE OPINION. THE |
| | ) | COURT'S PRIOR OPINION DATED |
| Defendant-Appellant. | ) | JANUARY 30, 2025 IS HEREBY |
| | ) | WITHDRAWN. |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Scott Wayman, District Judge.

The order of the district court denying the motion to suppress is <u>reversed</u> and the judgment of conviction is <u>vacated</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant Chadlen Dewayne Smith. Andrea W. Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. Kenneth K. Jorgensen argued.

---

MEYER, Justice

Chadlen Dewayne Smith appeals from his judgment of conviction for sexual exploitation of a child by possession of sexually exploitative material. The case began with allegations that Smith engaged in stalking behavior involving a police dispatcher, culminating in Smith's arrest. Following his arrest, law enforcement impounded his vehicle and conducted an inventory search, during which they seized electronic devices found inside. The devices contained sexually exploitative materials, forming the basis for Smith's conviction.

On appeal, Smith challenges the district court's denial of three motions; however, we only address Smith's motion to suppress the evidence found on the electronic devices in his vehicle, as it is dispositive. We reverse the district court's decision denying Smith's motion to suppress and vacate the judgment of conviction because the State did not meet its burden to show that the police officer's decision to impound Smith's vehicle served a community caretaking purpose.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2020, a dispatcher from the Post Falls Police Department was driving home at the end of her shift when she noticed a car following her. Concerned, she called the police for assistance. Officer Cousins responded and located the car that was following her, subsequently pulling it over. The driver, Smith, claimed he was in the neighborhood to look at the Christmas lights. Thereafter, the officer issued Smith a citation for not having a valid driver's license.

The next day, Smith contacted the police department by telephone, stating that someone was complaining about his presence in the neighborhood near the dispatcher's home. The day after this phone call, Smith visited the police department to request records. While there, he asked the dispatcher for her business card. She informed him that she did not carry business cards and became concerned that he was looking for personal information about her.

Following these interactions, the dispatcher grew increasingly worried about her safety. She began taking measures to feel safer, such as installing cameras outside of her house and parking her car in the police department's secure parking lot, even when she was not on duty.

Smith returned to the police station a few days later to make another records request. He received the records but was subsequently trespassed from the police department. While the record does not provide further details, we understand this to mean that the police department informed Smith that he was not allowed to return. If he returned, he would face prosecution for trespassing.

On January 2, 2021, the Post Falls Police Department received a call concerning a man matching Smith's description who was driving around, blasting loud music, and taking photographs near the dispatcher's home. Smith also called the police to report that someone complained and told him he needed to "move along."

The following morning, Officer Cousins found Smith parked at the crossroads near the dispatcher's home. Smith claimed that he was taking photographs of street signs because this was the area where he had received a citation on December 20, 2020. Officer Cousins detained Smith and asked if he had been in the area the previous night. Smith admitted that he had been there, taking pictures of the road.

Based on Smith's pattern of conduct, Officer Cousins arrested him for stalking in the second degree. During the arrest, Officer Cousins seized two cell phones and a digital camera from Smith, which were located on his person and in the passenger seat of his car. Smith was cited for misdemeanor stalking in the second degree; however, this charge was later dismissed.

Three days after Smith's arrest, Detective Uhrig requested a search warrant to locate any evidence of the alleged stalking on the devices seized from Smith. After the search warrant was signed by a magistrate judge, Detective Uhrig began looking for photographs on Smith's phone that would support the charge of stalking in the second degree because people engaging in the crime of stalking will often take pictures or videos of their victims. During this search, Detective Uhrig discovered "numerous photographs of infant vaginas," which were contained in a medical presentation .pdf file, and photographs of "marijuana grow operations." Detective Uhrig then requested an expanded search warrant to search Smith's phone for evidence of sexual exploitation of a child and manufacturing of a controlled substance. During this search, Detective Uhrig found evidence that the phone had visited a Russian website known for hosting child pornography. Reviewing the search history from Google Chrome on the device, Detective Uhrig found the search terms: "Amazing triplets," "Free kids photo," "Tilly 10 yo [sic] from Queensland," "Young swimmers, 11," "Young and tasty," and "Ukrainian girl Katya G 10-18 yr." Based on the images and the search terms, Detective Uhrig believed there was probable cause to arrest Smith for sexual exploitation of a minor.

In order to arrest Smith, Detective Uhrig emailed him on January 8, 2021, to inform him that the forensic examination of his phone was complete. Detective Uhrig arranged for Smith to pick up the phone three days later in the parking lot of Post Falls City Hall, as Smith was not allowed at the police station. When Smith arrived at City Hall, police informed him that they had found child pornography on his phone and placed him under arrest. After his arrest, Smith admitted to viewing the photographs in the medical presentation for "genealogical reasons." Detective Uhrig decided to impound and inventory Smith's car pursuant to Post Falls Police Department policy. Smith was released after the prosecutor declined to press charges against him related to the evidence found on his phone.

During the inventory search of Smith's car following his arrest at City Hall, a laptop, two thumb drives, and a hard drive were discovered. Detective Uhrig obtained an additional search warrant for these items, which led to the discovery of "thousands" of images and videos of child erotica on Smith's laptop. Some of the videos and images were captured with the same type of Samsung phone that the police took as evidence from Smith's car. Thereafter, an arrest warrant for Smith was issued. Smith was charged with one count of felony sexual exploitation of a child by possession of exploitative material and one count of misdemeanor distribution of obscene material.

3

Smith filed a motion to suppress all the evidence that police officers obtained, arguing that officers did not have probable cause for his stalking arrest. Alternatively, he argued that the impoundment of his vehicle was unconstitutional because the decision to impound it was unreasonable. The district court denied Smith's motion to suppress, concluding that there was probable cause to believe he committed second-degree stalking based on several reports of him taking photos near the dispatcher's home despite police warnings. In addition, the misdemeanor crime was committed in the officer's presence, and consequently, Smith was lawfully arrested. Finally, the towing of his car was deemed reasonable, as officers followed department procedures. The court concluded that the inventory search that resulted in the discovery of a laptop was proper because the court found no evidence that the towing was a pretext to search the vehicle.

Smith later filed a motion to dismiss, alleging a violation of his right to a speedy trial under Idaho Code section 19-3501. The district court denied this motion, ruling that the Idaho Supreme Court's COVID-19 emergency orders tolled the six-month statutory period.

At trial, the district court permitted the State to admit internet search terms found on Smith's devices under Idaho Rule of Evidence 404(b) to show intent and absence of mistake because the court determined the terms were relevant to Smith's intent and the risk of unfair prejudice was minimal.

After the jury trial, Smith was convicted of sexual exploitation of a child by possession of sexually exploitative material. I.C. § 18-1507(2)(a). Smith was acquitted of the second charge, distribution of obscene material. I.C. § 18-4103. Smith timely appealed his judgment of conviction.

## II.    STANDARDS OF REVIEW

When this Court reviews a trial court's denial of a motion to suppress, we employ a bifurcated standard of review. *State v. Ramos*, 172 Idaho 764, 770, 536 P.3d 876, 882 (2023). "This Court accepts 'the trial court's findings of fact unless they are clearly erroneous' but freely reviews 'the trial court's application of constitutional principles to the facts found.'" *Id*. (quoting *State v. Howard*, 169 Idaho 379, 381, 496 P.3d 865, 867 (2021)).

Whether probable cause exists is a question of law which we review de novo with deference given to the facts found by the trial court. *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

4

### III. ANALYSIS

Smith asks the Court to vacate his conviction and reverse the district court's orders denying his motion to suppress evidence and motion to dismiss the case on procedural grounds. Central to this appeal is whether the district court erred in denying Smith's motion to suppress evidence discovered in his vehicle. The seized evidence included an image containing a collage of explicit photographs depicting a child, which serves as the sole basis for the State's charge of sexual exploitation of a child by possession of sexually exploitative material.

Smith raises two key arguments regarding the district court's denial of his motion to suppress. First, he argues that his arrest for stalking lacked probable cause and was unconstitutional because it involved a warrantless arrest for a misdemeanor offense committed outside the officer's presence. He argues that if the officers did not have probable cause to arrest him for misdemeanor stalking, the search of his phone would have been in violation of the Fourth Amendment. Without the initial photos located on his phone, Detective Uhrig would not have investigated him for the sexual exploitation of a child. Without that investigation, Detective Uhrig would not have arrested him and impounded his vehicle. Second, he contends that the impoundment of his vehicle was unreasonable and constitutionally invalid. He alleges that if the impoundment of his vehicle was not proper, then the inventory search of his vehicle was unconstitutional, and the evidence taken from the car must be suppressed. Consequently, Smith asserts that the evidence obtained during the inventory search of his car is inadmissible as "fruit of the poisonous tree." We address each argument in turn.

### A. The district court properly concluded that Officer Cousins had probable cause to arrest Smith for misdemeanor stalking.

Smith argues that the district court erred in determining probable cause existed for his arrest for stalking, contending that he neither engaged in nonconsensual contact nor directly interacted with the dispatcher. The State argues that there was probable cause based on Smith's repeated presence in and surveillance of the dispatcher's neighborhood. According to the State, Smith's conduct included following the dispatcher's vehicle, appearing near her residence, and taking photographs of the area near her home, which caused the dispatcher significant concern. As a result, she implemented precautionary measures, such as installing security cameras and parking in secure locations.

"For an arrest to be considered lawful, it must be based on probable cause." *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009) (citation omitted). Our standard for determining

probable cause for an arrest is low. *See State v. Neal*, 155 Idaho 484, 486–87, 314 P.3d 166, 168–69 (2013). Probable cause requires "less than a preponderance of the evidence," *id.* at 487, 314 P.3d at 169, and is based on "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996) (alteration in original) (citation omitted). An arrest is supported by probable cause when it is based on information that "would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that such person is guilty." *Weber*, 116 Idaho at 452, 776 P.2d at 461 (quoting *State v. Alger*, 100 Idaho 675, 677, 603 P.2d 1009, 1011 (1979)). "[T]he facts making up a probable cause determination are viewed from an objective standpoint[.]" *State v. Amstutz*, 169 Idaho 144, 150, 492 P.3d 1103, 1109 (2021). Probable cause for an arrest lies in the totality of the circumstances known to the officer at the time of arrest. *See State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983) (adopting the "totality of the circumstances" analysis); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (adopting the "totality of the circumstances" analysis).

1.  Smith was engaged in repeated acts of nonconsensual contact with the dispatcher.

Smith challenges the district court's determination that his arrest for stalking was supported by probable cause. He advances two arguments on appeal: (1) a single allegation of nonconsensual contact cannot constitute the "course of conduct" required under Idaho Code section 18-7906, and (2) the State failed to present evidence that his behavior seriously alarmed, annoyed, or harassed the dispatcher. The State, however, contends that Smith's repeated actions—including following the dispatcher, repeatedly appearing near her residence, and taking photographs in her neighborhood—constituted a "course of conduct" under the statute.

Smith was initially arrested for committing the crime of stalking in the second degree, or misdemeanor stalking, in violation of Idaho Code section 18-7906. A person commits the crime of stalking if he knowingly and maliciously "[e]ngages in a course of conduct that seriously alarms, annoys or harasses the victim and is such as would cause a reasonable person substantial emotional distress[.]" I.C. § 18-7906(1)(a). The stalking statute defines "course of conduct" as "repeated acts of nonconsensual contact involving the victim . . . , provided however, that constitutionally protected activity is not included . . . ." I.C. § 18-7906(2)(a). Importantly, "nonconsensual contact" is "any contact with the victim that is initiated or continued without the victim's consent, that is beyond the scope of the consent provided by the victim, or that is in disregard of the victim's

6

expressed desire that the contact be avoided or discontinued." I.C. § 18-7906(2)(c). Examples of nonconsensual contact, provided by the statute, include:

> (i)    Following the victim or maintaining surveillance, including by electronic means, on the victim;
>
> (ii)   Contacting the victim in a public place or on private property;
>
> (iii)  Appearing at the workplace or residence of the victim;
>
> (iv)   Entering onto or remaining on property owned, leased or occupied by the victim;
>
> (v)    Contacting the victim by telephone or causing the victim's telephone to ring repeatedly or continuously regardless of whether a conversation ensues;
>
> (vi)   Sending mail or electronic communications to the victim; or
>
> (vii)  Placing an object on, or delivering an object to, property owned, leased or occupied by the victim.

I.C. § 18-7906(2)(c).

According to Smith, even though he appeared at the dispatcher's workplace, that conduct is constitutionally protected because the workplace is the Post Falls Police Department, where he requested a business card, made a records request, and recorded the interactions. The facts, however, establish that, separate from his visits to the Post Falls Police Department, Smith engaged in repeated acts of nonconsensual contact with the dispatcher, meeting the statutory definition of a "course of conduct" under Idaho Code section 18-7906.

Our decision in *State v. Eliasen*, 158 Idaho 542, 348 P.3d 157 (2015), supports this conclusion. In *Eliasen*, we upheld a second-degree stalking conviction in which the defendant appeared at the victim's residence and then followed her on the same day. *Id.* at 547, 348 P.3d at 162. In that case, the victim noticed a car stopped in the middle of the road outside her home, which then followed her to a store. *Id*. at 544, 348 P.3d at 159. The car stayed in the parking lot until she returned to her vehicle, and it followed her again as she left the store. *Id*. The defendant, the driver of the car, argued that her conduct was one continuous instance of nonconsensual contact as opposed to separate instances of stalking and could not constitute a "course of conduct." *See id.* at 547, 348 P.3d at 162. This Court disagreed based on the plain language of Idaho Code section 18-7906. *Id.* The Court held that because the statute includes "following *or* maintaining surveillance on the victim, and appearing at the victim's residence[,]" the defendant engaged in at least two acts that established a "course of conduct." *Id.*

7

Likewise, Smith engaged in at least two nonconsensual contacts identified in Idaho Code section 18-7906(2)(c): first by following the dispatcher on December 20, 2020, and second by returning to her residence two weeks later for two consecutive days and taking photographs. Smith admitted that, on December 20, 2020, he followed the dispatcher as she left work, driving behind her in a manner that caused the dispatcher to call the police. This act constitutes "following the victim or maintaining surveillance" under Idaho Code section 18-7906(2)(c)(i).

Smith's concerning behavior continued into the new year. On January 2 and January 3, 2021, he was observed parked near the dispatcher's home. On the morning of January 3, Officer Cousins observed Smith parked within several hundred feet of the dispatcher's home around 5:00 a.m. During questioning, Smith admitted to being in the area the previous evening and taking photographs of road signs, allegedly related to an earlier traffic stop. This conduct amounts to "appearing at the residence of the victim," under section 18-7906(2)(c)(iii).

Although Smith claimed he was merely in the area to view Christmas lights and take photographs of the roadway associated with an earlier traffic stop, his explanation does not negate the reasonable inference the officer made, which led him to believe that Smith was stalking the dispatcher. *See District of Columbia v. Wesby*, 583 U.S. 48, 61–62 (2018) (explaining that probable cause does not require officers to eliminate every possible innocent explanation for the suspicious facts they observe); *see also State v. Danney*, 153 Idaho 405, 411, 283 P.3d 722, 728 (2012) (explaining that "the existence of alternative innocent explanations does not necessarily negate reasonable suspicion").

In *Eliasen*, we examined the plain language of the statute to identify actions that are considered nonconsensual contact. 158 Idaho at 547, 348 P.3d at 162. We concluded that the defendant there had engaged in several acts of nonconsensual contact and that it was not necessary for these actions to be temporally separated by any break in time to be considered "repeated acts." *See id.* at 546–47, 348 P.3d at 161–62. Here, even if we required a temporal break between each action of nonconsensual contact (which we do not), Smith's conduct occurred over several weeks, meeting that stricter standard. Smith's actions clearly constituted a course of conduct consisting of multiple repeated acts of nonconsensual conduct.

Smith next argues that the State failed to present evidence that his behavior seriously alarmed, annoyed, or harassed the dispatcher because she was unaware of Smith's actions after December 20, 2020. This argument is unavailing. The dispatcher's lack of knowledge regarding

Smith's presence in her neighborhood in January is inconsequential. Her reaction to the incident in December is enough to satisfy the emotional impact requirement of the crime. Out of fear for her safety, she installed security cameras at her home and began parking her vehicle in a secure lot at the police department, even when she was not working, due to the conduct Smith exhibited starting December 20, 2020. Officer Cousins and, in turn, the district court could reasonably conclude from the dispatcher's response that Smith's presence only a few hundred feet from her home would seriously alarm, annoy, or harass her. Once advised of his presence, the information would likely "cause a reasonable person substantial emotional distress." I.C. § 18-7906(1)(a).

In summary, we consider the totality of all the circumstances, including the plausibility of Smith's explanation for suspicious facts to determine whether there was probable cause to believe Smith committed stalking in the second degree. Given the low standard for probable cause, we conclude that a reasonable, prudent person would believe that Smith knowingly and maliciously engaged in a course of conduct by following the dispatcher and appearing near her residence, which seriously alarmed, annoyed, or harassed her and would cause a reasonable person substantial emotional distress. I.C. § 18-7906(1)(a).

2. State v. Clarke does not apply in this case because Smith's stalking conduct occurred in Officer Cousins' presence.

As an alternative argument, Smith challenges his warrantless arrest for a misdemeanor charge as unconstitutional. According to Smith, simply being in the area of the dispatcher's home does not satisfy probable cause to arrest. He emphasizes that the State cannot assume intent to harass or alarm based solely on proximity without direct interactions. The State disputes Smith's claim, contending that Smith's behavior, including following the dispatcher from work, attempting to gather information on her by requesting her business card, and returning to the neighborhood on multiple occasions without a justifiable reason, justified Officer Cousins' belief that he was engaged in stalking at the time of his January 3, 2021, arrest.

Smith's argument invokes *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), in which we held that Article I, section 17 of the Idaho Constitution prohibits an officer from making an arrest without a warrant for misdemeanors not committed in his presence. *Id*. at 399, 446 P.3d at 457. In this case, there is no dispute that Smith was originally arrested for misdemeanor stalking in the second degree without a warrant. Thus, the question arises whether Smith committed the stalking offense in the arresting officer's presence.

Smith's argument incorrectly blends the examples of nonconsensual contact listed in Idaho Code section 18-7906(2)(c). The list includes contacting the victim in a public place or on private property, *or* appearing at the victim's residence, *or* entering onto or remaining on the victim's property. *See* I.C. § 18-7906(2)(c). There is a distinction. While Smith did not initiate communication with the dispatcher or physically step onto her property, Smith appeared at the dispatcher's residence. In *Eliasen*, the defendant sat in her vehicle near the victim's home, waited for the victim to pull out of her driveway, made a U-turn, and followed the victim to the store. 158 Idaho at 544, 348 P.3d at 159. Although only appearing outside the victim's home in her car, we upheld the stalking conviction because one of the defendant's nonconsensual contacts with the victim was appearing at the victim's residence and the other was following the victim to the store. *See id.* at 547, 348 P.3d at 162.

In this case, Smith was sitting in his car near the dispatcher's home on the day of his arrest. Smith's contention that he was unaware of the dispatcher's home address and was not intentionally surveilling her residence, if believed by a jury, may be successful at a future trial where the standard of proof is much higher; however, the lower probable cause standard is applicable here. And like the defendant in *Eliasen*, who sat in her car near the victim's home, Smith's presence within several hundred feet of the dispatcher's home was sufficient to establish that he appeared at the victim's residence, under Idaho Code section 18-7906(2)(c)(iii). In addition, two weeks before Smith's arrest, Officer Cousins stopped Smith after the dispatcher reported someone following her home. Before the traffic stop, Officer Cousins observed Smith following the dispatcher. Once the officer's patrol vehicle was visible, Smith stopped following and quickly left the area. When questioned, Smith indicated that he was taking pictures of the Christmas lights. However, forty minutes later, when Smith was still in the area, Officer Cousins informed him he should move elsewhere. Smith declined, stating that he was waiting for a ride. Notably, Smith claims that the only allegation of nonconsensual contact, under Idaho Code section 18-7906(2)(c)(i), was his following of the dispatcher on December 20, 2020. He does not dispute this allegation. Officer Cousins observed Smith following the dispatcher in December and then again when Smith appeared at the dispatcher's residence in January. As a result, Officer Cousins had probable cause to arrest Smith for misdemeanor stalking in the second degree, which was committed in the officer's presence.

In summary, we hold that the entirety of the information known to the officer established probable cause to believe that Smith engaged in a course of conduct that, based on the totality of

10

the circumstances, could have led a person of ordinary prudence to believe that Smith was stalking the dispatcher. Therefore, Smith's arrest did not violate his constitutional rights. We affirm the district court's determination that there was probable cause to believe that Smith committed the crime of misdemeanor stalking. Because Smith's arrest was supported by probable cause, the seizure of his phone was lawful.

**B.** **The district court erred when it concluded that the inventory search of Smith's car was constitutional.**

Smith argues that by impounding his car and performing an inventory search after his arrest the police officers violated his Fourth Amendment rights. Smith's constitutional challenge arises exclusively under the United States Constitution, as Smith makes no argument on appeal under the Idaho Constitution.[1] Specifically, Smith contends that impounding his vehicle, which led to the inventory search, was unreasonable and merely a pretext to justify the search. The State maintains that the search was constitutional because "Detective Uhrig was 'very familiar with the processes for seizing and maintaining evidence,' including '[w]hen a vehicle is inventoried,' and that 'procedure was followed here.'" (Alterations in original; citation omitted.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend IV. As always, we start with the presumption that warrantless searches and seizures are unreasonable. *State v. Hollist*, 170 Idaho 556, 561, 513 P.3d 1176, 1181 (2022). The State carries the burden to "demonstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances." *State v. Hoskins*, 165 Idaho 217, 221, 443 P.3d 231, 235 (2019) (quoting *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995)).

The inventory search is one such exception to the warrant requirement. *South Dakota v. Opperman*, 428 U.S. 364, 374–75 (1976). An inventory following the impoundment of an automobile in carrying out an officer's community caretaking function "is a reasonable and legitimate means to safeguard the owner's property, to prevent claims against the police for lost or stolen property, and to protect the police and others from dangerous instrumentalities that may be

---

[1] "The Idaho Constitution offers protection for unlawful search and seizure as well. Idaho Const. art. I, § 17. However, [the defendant] does not argue that Idaho's Constitution provides greater protection than the U.S. Constitution; thus, our analysis is limited to the Fourth Amendment to the U.S. Constitution." *State v. Lee*, 162 Idaho 642, 647 n.1, 402 P.3d 1095, 1100 n.1 (2017) (citation omitted).

inside the vehicle." *Weaver*, 127 Idaho at 290–91, 900 P.2d at 198–99 (citations omitted). Such warrantless inventory searches, when conducted in compliance with standard and established police procedures, do not offend Fourth Amendment protections against unreasonable searches and seizures. *Id.* Critically, however, the origin of the vehicle's inventory search—the impoundment itself—is a seizure, which is also subject to the Fourth Amendment prohibition against unreasonable seizures. *See Opperman*, 428 U.S. at 372–73. That is to say, the impound "must be reasonable under all the circumstances known to the police when the decision to impound was made." *Weaver*, 127 Idaho at 291, 900 P.2d at 199. And then the subsequent inventory search must still be conducted in compliance with standard and established police procedures. *See id.* at 290, 900 P.2d at 198.

1. The record is devoid of evidence to support the conclusion that Detective Uhrig's decision to impound Smith's car was reasonable under the circumstances.

This Court, in *State v. Ramos*, recently analyzed law enforcement's community caretaking function when impounding a vehicle. 172 Idaho 764, 536 P.3d 876 (2023). We stated that "whether an impoundment [of a motor vehicle] is lawful, or reasonable under the circumstances, depends on if it constitutes 'community caretaking' by law enforcement." *Id.* at 773–74, 536 P.3d at 885–86 (first citing *Opperman*, 428 U.S. at 368–69; and then citing *Weaver*, 127 Idaho at 290, 900 P.2d at 198). In that case, a sheriff's deputy found an unattended vehicle parked near a public restroom with its windows down and trunk open. *Id.* at 767, 536 P.3d at 879. The car was improperly parked, slightly over a no-parking line, but not obstructing traffic. *Id.* at 769, 536 P.3d at 881. The officer, familiar with the vehicle's owner, discovered the owner had an outstanding felony warrant. *Id.* at 767, 536 P.3d at 879. Without obtaining a warrant, the officer impounded the car and conducted an inventory search, during which drugs were discovered. *Id.* at 766, 536 P.3d at 878.

We held in *Ramos* that "where the 'primary purpose' behind the decision to impound a car is for the police to perform an inventory search in order to investigate their criminal suspicions, the impoundment and subsequent search violate the Fourth Amendment." *Id.* at 773, 536 P.3d at 885. We explained that law enforcement's concern to protect the impounded vehicle's owner from theft or damage "is not necessarily a valid purpose for deciding to impound the vehicle" and is irrelevant to the reasonableness analysis. *Id.* at 773, 775, 536 P.3d at 885, 887 (emphasis omitted). Offering guidance on remand, we explained:

> First, we note that the usual method of determining whether an officer's decision to impound a car is reasonable is to judge the officer's decision against an

objective standard. However, determining whether an officer's primary purpose in deciding to impound a car is an impermissible pretext will require the district court to consider evidence regarding the officer's *subjective* intent. Because of this variance from our usual standard, a remand is necessary for the district court to apply the appropriate standard of review.

*Id*. at 773, 536 P.3d at 885 (citation omitted).

We next emphasized that, "even if the primary purpose behind the officer's decision to impound the car is not pretextual, the State must still prove that the decision to impound the car is reasonable under the circumstances." *Id*. (citing *Weaver*, 127 Idaho at 290, 900 P.2d at 198). We explained further:

> The decision to impound a vehicle and the subsequent inventory search of that vehicle serve different purposes. *Opperman*, 428 U.S. at 368–69, 96 S.Ct. 3092. In *Opperman*, the United States Supreme Court explained that the decision to impound a vehicle must be "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions[.]'" *Id.* at 368, 96 S.Ct. 3092 (internal citation omitted). In contrast, one of the purposes of conducting an inventory search is the State's responsibility, *once the vehicle is in police possession*, to protect "the owner's property while it remains in police custody[.]" *Id.* at 369, 96 S.Ct. 3092. Thus, while the protection of the vehicle owner's property is a legitimate *concern* for law enforcement when performing the inventory search, such concern is not necessarily a valid *purpose* for deciding to impound the vehicle in the first place.

*Id.* (alterations in original). Without clear instruction from the United States Supreme Court, we declined to expand *Opperman's* "community caretaking" rationale to justify impounding a motor vehicle based on potential property damage or theft for two reasons. *Id.* at 774, 536 P.3d at 886. First, we clarified that the community caretaking function allows an officer to detain an individual "only if there is a present need for assistance." *Id*. (quoting *State v. Maddox*, 137 Idaho 821, 825, 54 P.3d 464, 468 (Ct. App. 2002)). We reasoned that an officer's concern that a vehicle may be stolen or damaged does not constitute a "present need for assistance" to justify seizing an individual's property. *Id.* "Second, expanding *Opperman's* 'community caretaking' rationale to include potential theft or property damage to the car as an acceptable reason to impound that vehicle" may lead to tort liability for police officers by creating a duty where one did not previously exist. *Id*.

In this case, the district court upheld the inventory search, concluding that the search complied with Post Falls Police Department procedures and that the officers conducted it as part of a lawful impoundment. The court reasoned that

13

an officer does not have a legal obligation to allow anyone else to take possession of the vehicle and once the defendant has been arrested, because now they have taken custody of the defendant and have some legal obligation towards the defendant's property. So the State's decision to impound the vehicle as opposed to leaving it parked or releasing it to another party was reasonable in this case because it was done pursuant to the Post Falls police procedures. . . .

> This type of a series of events are [sic] consistent with the purposes of inventory searches. First, it's to protect the owner's property while remaining in police custody. Second, it's to protect the State against false claims of lost or stolen property. And third, to protect the police from potential danger.

Given our recent decision in *Ramos*, we disagree with the district court's conclusion and its underlying reasoning.

Here, Smith drove his car and parked it in the City Hall parking lot before his arrest. The State's argument that the impoundment was carried out according to standard Post Falls Police Department procedures following Smith's arrest is misplaced. Before police officers may conduct an inventory search, the warrantless impoundment must nevertheless be reasonable under the Fourth Amendment. *See id.* at 773–74, 536 P.3d at 885–86 (citing *Weaver*, 127 Idaho at 290, 900 P.2d at 198). To repeat, an officer's earlier decision to impound an individual's car must first be reasonable. *See id.* If the impound is reasonable, then its subsequent inventory, if it adheres to standard police department procedures, is relevant to the reasonableness of the search. *See Weaver*, 127 Idaho at 290–91, 900 P.2d at 198–99 (citations omitted). We must first determine whether Detective Uhrig's decision to impound Smith's car was reasonable.

In that regard, Detective Uhrig listed Idaho Code section "49-662 Arrest" on the impound notice as his reason to impound. Idaho Code section 49-662 grants police officers the authority to remove vehicles to the nearest garage or other place of safety in four circumstances. I.C. § 49-662(3). Relevant here, Idaho Code section 49-662 provides:

> (1) Whenever any peace officer finds a vehicle in violation of any of the provisions of section 49-659, Idaho Code, the officer is authorized to move the vehicle, or require the driver or other person in charge of the vehicle to move it to a position off the roadway.

> (2) Any peace officer is authorized to remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway in a position or under circumstances as to obstruct the normal movement of traffic.

> (3) Any peace officer is authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:

> > . . . .

14

(c) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay.

I.C. § 49-662(1), (2), (3)(c). Section 49-662 does not authorize the impoundment of Smith's vehicle for three reasons. First, Smith's vehicle did not violate Idaho Code section 49-659, which prohibits vehicles from stopping, standing, or parking on the roadway outside businesses or residential districts when it was practicable to do so off the roadway. *See* I.C. §§ 49-659, -662(1). Second, Smith's vehicle was not "found upon a highway" as it was in a parking lot. I.C. § 49-662(3). Third, the authorization for impoundment under Idaho Code section 49-662(3)(c) does not, by itself, establish compliance with the requirements of the Fourth Amendment. *Weaver*, 127 Idaho at 292, 900 P.2d at 200 (Silak, J., specially concurring) (citing *Opperman*, 428 U.S. at 372) (noting that "the inquiry is not whether the search was authorized by state law but whether it was reasonable under the Fourth Amendment").

During the motion to suppress hearing, Detective Uhrig provided two other reasons for his decision to impound the car. First, he claimed, "[Smith] was arrested and so we were impounding his car," and second, he stated that he was impounding the car "because it was at City Hall." In *Ramos*, we identified examples of impounding a vehicle that obstructs traffic or threatens public safety as serving a reasonable community caretaking purpose. *See* 172 Idaho at 773–74, 536 P.3d at 885–86. By contrast, in this instance, the State did not present evidence that Smith's car, which was parked at City Hall, either obstructed traffic or threatened public safety. The record lacks any indication that the impound served a legitimate community caretaking purpose, such as being parked in a no-parking zone, obstructing traffic, or violating any parking ordinances. We hold that without this evidence, the justification for impoundment is insufficient. However, we do not agree with Smith's assertion that this was a pretext case. While the State failed to provide adequate evidence to justify the impoundment as a community caretaking action, this failure does not mean the officer acted in bad faith or was trying to misuse law enforcement authority for ulterior motives. Nevertheless, without a legitimate community caretaking purpose, the impoundment was not reasonable. As a result, the search of Smith's vehicle does not fall within the inventory exception to the Fourth Amendment's warrant requirement. We will next address the implications of our holding in this case.

15

2. The evidence obtained as a result of the warrantless inventory search should have been excluded from the trial.

Because the impoundment and subsequent inventory search violated the Fourth Amendment, all evidence derived from the search must be excluded under the exclusionary rule. This includes the laptop and digital storage devices found in Smith's vehicle, as well as any evidence obtained through subsequent search warrants. Under the exclusionary rule, evidence obtained as the result of a Fourth Amendment violation may not be used against the subject of the search. *State v. Vivian*, 171 Idaho 79, 83, 518 P.3d 378, 382 (2022) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). "The exclusionary rule requires the suppression of both 'primary evidence obtained as a direct result of an illegal search or seizure' and, pertinent here, 'evidence later discovered and found to be derivative of an illegality,' the proverbial 'fruit of the poisonous tree.'" *State v. Plata*, 171 Idaho 833, 839, 526 P.3d 1003, 1009 (2023) (emphasis and citation omitted). In other words, "[i]f the impoundment violates the Fourth Amendment, the accompanying inventory is also tainted, and evidence found in the search must be suppressed." *Weaver*, 127 Idaho at 291, 900 P.2d at 199.

Here, the inventory search yielded an HP laptop and three digital storage devices. After obtaining a search warrant for the laptop, Detective Uhrig found an image containing a collage of photographs of a child posing for the camera with her intimate areas exposed. The image is the sole basis for Smith's sexual exploitation of a child charge under Idaho Code section 18-1507. Critically, the inventory search—and the resulting discovery of the laptop—stemmed directly from the unconstitutional impoundment of Smith's vehicle. Without the unlawful impoundment, the evidence would not have been obtained. As such, the images are inadmissible under the "fruit of the poisonous tree" doctrine, necessitating their exclusion from trial. Without this improperly obtained evidence, the State's case against Smith for sexual exploitation of a child collapses.

Therefore, the district court, which did not have the benefit of our recent decision in *Ramos* at the time it considered this issue, erred in concluding that the inventory search of Smith's vehicle was constitutional. The State did not meet its burden to show that the officer's decision to impound Smith's vehicle served a community caretaking purpose. As a result, the impoundment was unreasonable, making the subsequent inventory search a violation of Smith's Fourth Amendment right against unreasonable searches and seizures. Consequently, the evidence obtained from the search should have been excluded at trial. In light of this holding, we do not reach Smith's remaining claims of error.

16

## IV. CONCLUSION

The decision of the district court denying Smith's motion to suppress evidence is reversed and the judgment of conviction is vacated.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

## ON DENIAL OF PETITION FOR REHEARING

MEYER, Justice.

After we released this opinion, the State filed a petition for rehearing, arguing that this Court's decision wrongly excluded an arrest as a legal justification for impounding Smith's vehicle, which, the State maintains, contradicts longstanding Idaho precedent and persuasive authority from other jurisdictions. The State contends that our decision limits impoundment to parking and traffic concerns, thereby effectively holding unconstitutional all standard police procedure policies that allow impoundment following an arrest. The State's arguments are not well taken and the petition for rehearing is DENIED.

## A. The State waived the argument asserted in its petition for rehearing.

The State's petition for rehearing argues that an impoundment of a vehicle is constitutionally justified when officers arrest a driver or occupant of a vehicle, even in the absence of a traffic hazard, parking violation, or valid community caretaking consideration. However, this argument was not raised, argued, or supported by authority in its principal briefing before this Court on appeal.

The Idaho Appellate Rules establish requirements for presenting arguments on appeal. Under the Idaho Appellate Rules, a respondent is obligated to affirmatively present and support arguments on appeal. Rule 35 provides that if "the respondent contends that the issues presented on appeal listed in appellant's brief are insufficient, incomplete, or raise additional issues for review, the respondent may list additional issues presented on appeal[.]" I.A.R. 35(b)(4). In addition, the respondent's arguments must "contain the contentions of the respondent with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(b)(6).

These provisions serve not only to promote efficiency and fairness in appellate review but also to ensure that each party has a full and fair opportunity to respond to the legal questions properly before the Court. A party's failure to raise an issue in its principal briefing cannot be

17

cured by raising it for the first time in a petition for rehearing. As the Ninth Circuit Court of Appeals has explained, a petition for rehearing does not serve as a mechanism for presenting new arguments that could have been raised during the direct appeal but were not. *See Picazo v. Alameida*, 366 F.3d 971, 972 (9th Cir. 2004) (mem.) (explaining that the State did not argue at any point until the petition for rehearing that the Court should apply or even consider a new standard of review). This Court has likewise made clear that arguments on appeal must be properly developed and supported by citations to applicable authority. *See, e.g.*, *State v. McDay*, 164 Idaho 526, 528, 432 P.3d 643, 645 (2018) (stating that "if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered").

Here, the State did not argue in its responsive brief that Idaho recognizes impoundment incident to arrest. Instead, the brief consisted primarily of a perfunctory rebuttal to the appellant's arguments. While it is appropriate for a respondent to address opposing arguments, raising additional issues requires more than reactive criticism; it demands a coherent and affirmative rationale for the position advanced. The State's response failed to present any independent justification for the search or seizure in question. As a result, both the appellant and this Court were deprived of the opportunity to engage with the issue through the appellate review process. Raising an argument only in the petition for rehearing—after the appeal had been fully briefed and argued—does not satisfy the requirements for consideration by this Court. Thus, the State's petition for rehearing must be denied.

**B.      The State mischaracterizes our opinion and misrepresents Idaho law.**

Even if we were inclined to look beyond the State's failure to argue impoundment incidental to arrest as the legal basis for the seizure and search of Smith's vehicle, the State's legal arguments are without merit. The State claims that this Court's ruling creates unnecessary challenges for law enforcement with far-reaching consequences. According to the State, this Court has unduly restricted law enforcement's ability to deal with property, such as automobiles left stranded by the arrest of an individual, by eliminating arrest as a valid reason for impoundment. The State suggests that police officers who cannot impound a vehicle following an arrest will be forced to leave the vehicle unattended indefinitely, potentially creating security risks or legal ambiguities regarding abandoned property. The State's contentions are overblown. While the State argues that the opinion creates a "far-reaching" restriction, our decision did not hold that officers

18

are never permitted to impound vehicles post-arrest, nor did it disturb the statutory mechanisms available to law enforcement to manage abandoned or obstructive vehicles.

The State's contention that officers may be forced to leave vehicles unattended indefinitely ignores Idaho statutes that generally permit law enforcement to tow abandoned vehicles. Idaho's towing and storage of motor vehicles statutes provide law enforcement with the statutory framework for addressing potentially abandoned vehicles. *See* I.C. §§ 49-1808 to 49-1819. Under Idaho Code section 49-1804, an officer "who has reasonable grounds to believe that the vehicle has been abandoned, may remove the vehicle . . . to a garage or nearest place of safety." I.C. § 49-1804. A vehicle may be treated as "abandoned" if it remains on public or private property without permission for 24 hours or more — unless the owner has contacted law enforcement and requested help due to an inability to move the vehicle. *See* I.C. § 49-102(1), (2).

The State's characterization of our decision as a sweeping restriction is inaccurate and discredits the balance that the opinion strikes between public safety and constitutional protections. Contrary to the State's assertion, law enforcement continues to have tools to manage unattended vehicles. We only held that the State did not meet its burden *in this case* to show that the police officer's decision to impound Smith's vehicle served a community caretaking purpose, e.g., the vehicle had to be removed because there was a city ordinance prohibiting overnight parking, or the vehicle was obstructing a right of way. *See* analysis *supra* Section II.B.1. The case serves as a reminder that property seizures must be justified, not assumed.

The State also claims that this Court's ruling contradicts established legal precedent in Idaho and other courts across the United States. However, the State's reliance on non-binding out-of-state cases is misplaced, as these cases present varied approaches and do not provide a clear rule authorizing impoundment based solely on an arrest. In addition, this Court has not recognized a stand-alone "impound incident to arrest" exception to the Fourth Amendment's warrant requirement. The State asserts that before our opinion, an officer's decision to impound a car was justified by either (1) a traffic hazard or (2) an arrest. The State cites two Idaho cases to support its position. *State v. Smith*, 120 Idaho 77, 813 P.2d 888 (1991) ("*Smith* 1991"), and *Idaho Department of Law Enforcement ex rel. Richardson v. $34,000 U.S. Currency*, 121 Idaho 211, 824 P.2d 142 (1991). Both cases examined vehicle searches following an impound under the Fourth Amendment, with the former being a criminal case and the latter a civil forfeiture case. However, these cases are distinguishable.

In *Smith* (1991), an officer stopped the defendant for speeding and erratic driving. 120 Idaho at 78, 813 P.2d at 889. As he approached, the officer saw the defendant reaching under his seat, raising suspicion that he was hiding something. *Id.* The defendant revealed a loaded firearm under the seat, leading to his arrest for carrying a concealed weapon. *Id.* During the investigation, officers found inconsistencies in vehicle ownership: the car was registered to the defendant and another person, but the Vehicle Identification Number appeared to be tampered with. *Id.* at 78–79, 813 P.2d at 889–90. Due to these concerns and the vehicle's hazardous location on a busy interchange, officers decided to impound it for safety reasons and to investigate a potential vehicle theft. *Id.* at 79, 813 P.2d at 890. They conducted an inventory search and found cocaine. *Id.* The defendant contested the search, arguing it was a pretext for an investigative search without a warrant. *Id.*

We rejected this argument on appeal and relied on *South Dakota v. Opperman*, 428 U.S. 364 (1976), to conclude that the inventory search was reasonable for "the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *Id.* at 80, 813 P.2d at 891 (quoting *Opperman*, 428 U.S. at 369). Then, because the inventory search was (1) conducted according to standard police procedure policies, and (2) was not intended to uncover evidence of a crime, the search did not violate the Fourth Amendment. *See id.*

In its petition for rehearing, the State misrepresents the holding of *Smith* (1991) in stating that "[t]he initial decision to impound a vehicle that poses a traffic hazard or following the operator's arrest is left to the discretion of the officer involved." (emphasis omitted). This is not what *Smith* (1991) held. In *Smith* (1991), this Court held "that the district court did not abuse its discretion in denying the defendant's motion to suppress." 120 Idaho at 81, 813 P.2d at 892. Without explicitly using the words "community caretaking," the Court explained that the vehicle was impounded due to its hazardous position on a high-traffic roadway following the arrest of the driver who would be unavailable to move the car. *See id.* at 80, 813 P.2d at 891. The Court's reasoning focused on the traffic hazard:

> The defendant's car was on an incline at the interchange of U.S. Highways 12 and 95 facing north. This is an area with heavy traffic and no shoulder on the side of the road. The speed limit is forty-five miles per hour at that point, but it is close to the fifty-five miles per hour marker.

20

*Id.* The State's contention that *Smith* (1991) stands for the proposition that an officer has discretion to impound a vehicle following the arrest of the driver, without more, is incorrect. This Court engaged in an analysis concerning the reasonableness of the impoundment and nothing in the case supports the conclusion that impoundment upon arrest is per se reasonable under the Fourth Amendment.

Next, the Idaho Court of Appeals, in *$34,000 U.S. Currency*, was clear in its reliance on an officer's "community caretaking function" to conclude that the decision to impound after the officer arrested the driver was reasonable when made in accordance with standard police procedures. *See* 121 Idaho at 214–15, 824 P.2d at 145–46. In its petition for rehearing, the State emphasizes one sentence from the case without disclosing the context. The State declares, "[t]he Idaho Court of Appeals has held that an arrest will generally make impounding a car reasonable." In fact, however, the Court of Appeals stated:

> Generally, a car may be impounded for safekeeping when the owner or operator of the car is arrested away from his home. W. LaFave, SEARCH AND SEIZURE, § 7.3(c), p. 85 (2d ed. 1987). Impounding the car using established procedures is a valid exercise of the community caretaking function of the police and once a car is impounded the police are authorized to conduct an inventory search of the vehicle. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

*Id.* at 214, 824 P.2d at 145. The driver in *$34,000 U.S. Currency* was initially arrested for driving without privileges. *Id.* at 213, 824 P.2d at 144. The driver challenged the impoundment of the vehicle, arguing that it was an unreasonable seizure. *Id.* at 214, 824 P.2d at 145. The Court of Appeals disagreed and determined that the impoundment was reasonable for several reasons. *See id.* at 214–15, 824 P.2d at 145–46. First, the driver had no license and was legally prohibited from driving. *Id.* Second, no one present was legally allowed to drive or take control of the car since the driver and passenger were not listed on the car's rental agreement, which specified that the vehicle could only be released to authorized drivers. *Id.* Third, leaving the car on Interstate 15 south of Pocatello at night posed safety risks to traffic. *Id.* Finally, the officer followed standard Idaho State Police procedures, which required impoundment when a vehicle's driver was arrested and a passenger could not legally operate the car. *Id.*

*Smith* (1991) and *$34,000 U.S. Currency* do not support the State's position. Both cases had public safety justifications for the impoundments, but there is no such justification in this case. *Smith* (1991) and *$34,000 U.S. Currency* are also factually distinct from the facts in this case,

where the impoundment was based on traffic safety statutes that do not apply. The defendants' vehicles in *Smith* (1991) and *$34,000 U.S. Currency* were parked on heavily trafficked highways at night, posing a safety hazard for other drivers. Smith's vehicle, in this case, was parked in a city parking lot after hours, posing no safety hazard to other drivers. Finally, nothing in *$34,000 U.S. Currency* purports to hold that an officer can impound a vehicle solely on the basis that he arrested the driver. The State's petition for rehearing relies on a selective—and notably incomplete— reading of *Smith* (1991) and *$34,000 U.S. Currency*.

In summary, the State waived the argument asserted in its petition for rehearing and, even if the State did not waive its argument, the State's petition does not present compelling reasons for this Court to reconsider its decision.

The State's petition for rehearing is DENIED.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.