201 P.3d 1277

STATE of Idaho, Plaintiff–Respondent,

v.

Myron Dale LOOMIS, Jr.,
Defendant–Appellant.

No. 35368.

Supreme Court of Idaho,
Boise, December 2008 Term.

Jan. 22, 2009.

Hallin Law, PLLC, McCall, for appellant. Jonathon D. Hallin argued.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

J. JONES, Justice.

Dale Loomis was charged with aggravated assault. At the conclusion of his preliminary hearing, the magistrate judge dismissed the complaint against Loomis. The State appealed to the district court, which vacated the magistrate's order and remanded the case. Loomis appealed and the Court of Appeals vacated the district court's order, holding that the magistrate's dismissal of the complaint was not appealable. The State filed a petition for review, which this Court granted. We vacate the district court's order.

I.

On June 29, 2005, retired Idaho State Police Officer Darrel Kelley—a part-time employee of Honey Dippers, a business that pumps out portable toilets—drove his pick-

up truck to a shooting range in Valley County to service a toilet.[1] When he arrived at the range, he discovered that the toilet was not in its usual location. An individual there told Kelley he heard that Dale Loomis had moved the toilet into the woods and dumped it. The news that Loomis, Kelley's brother-in-law, had tampered with the toilet made Kelley very angry. Their relationship was apparently already strained: Kelley had known Loomis for about sixteen years, was married to Loomis' sister, and was having an affair with Loomis' wife, which Loomis knew about.

Kelley grew even angrier when he found the toilet about a mile from the range, tipped on its side with its contents spilled all over the interior. Kelley retrieved the toilet, put it on the back of his truck, and began driving back to the Honey Dippers shop in order to clean up the mess. Kelley suspected Loomis might be in the area because he had seen Loomis driving his dump truck earlier that day. As Kelley hauled the toilet back to the shop, he looked for Loomis.

Around noon, Kelley turned west onto Davis Creek Road and spotted Loomis in his dump truck, headed toward him from the opposite direction. Both men stopped their trucks, with Kelley's vehicle blocking a couple feet of Loomis' lane. Kelley exited his vehicle and approached Loomis—who remained in the driver's seat of his truck—with the intent of engaging him in a fight by provoking Loomis into taking a swing at him. When he reached the driver-side door, Kelley told Loomis through the open window: "Get out of the truck, asshole." Loomis did not respond, so Kelley stepped closer to the truck and reached for Loomis' door handle. Kelley planned on opening Loomis' door and, although he had not considered exactly what he would do next, his ultimate goal was to get Loomis out of the truck, provoke a fight, and "tr[y] to put him in the hospital." Things did not go as Kelley planned, however, because Loomis pointed a .41 caliber revolver at Kelley's chest, pulled back the hammer, and told Kelley to "get away." Loomis later told officials that he was afraid of Kel-

ley, and that he pulled out the weapon to frighten him off.

After Loomis produced the gun, Kelley took a step back from Loomis' truck, but continued to verbally provoke Loomis by yelling "[you don't] have enough nerve to shoot me" and calling Loomis a chicken. Loomis responded by firing one shot into the pavement near Kelley's feet. The bullet did not hit Kelley, but it was close enough that he felt the muzzle blast and pavement splatter from the gunshot. Kelley also heard a child scream, and noticed for the first time that Loomis' six-year-old son was sitting in the truck. Kelley then ran back to his truck, told Loomis that he was going to go to jail over the incident, and both parties drove away.

Kelley reported the incident to the Valley County Sheriff's Department, which sent out a deputy to arrest Loomis. Loomis was charged with aggravated assault, a felony under I.C. §§ 18–901 and 18–905.

After the preliminary hearing, the magistrate judge dismissed the complaint against Loomis for aggravated assault. Without addressing whether the State had met its burden of showing probable cause to believe that Loomis committed the crime of aggravated assault, the court held that the State was required to prove that Loomis' actions of self-defense were not justifiable.

The State appealed the dismissal to the district court, which held the State was not required to prove that a defendant's actions were not justifiable at the preliminary hearing stage. The court remanded the case and ordered the magistrate to determine whether the State had met its burden of showing probable cause on each of the material elements of aggravated assault. Loomis appealed the district court's order.

On Loomis' appeal, the Court of Appeals ordered the parties to submit supplemental briefs on an issue not previously raised by either party—whether *State v. Ruiz*, 106 Idaho 336, 678 P.2d 1109 (1984), limits the State's remedy to re-filing before a different magistrate in the situation where a complaint is dismissed at the conclusion of the prelimi-

---

1. The facts of this case were produced during the August 16, 2005 preliminary hearing.

nary hearing. Although both parties argued that the rule set forth in *Ruiz* should be relaxed when the magistrate's dismissal is based on an issue of law, the Court of Appeals held that "[d]espite the legitimate arguments presented against applying *Ruiz*, we are constrained to follow its precedent" because the State admitted that it could re-file the case before another magistrate. The State filed a petition for review, which this Court granted.

## II.

We limit our consideration to the issue of whether the State can appeal from the dismissal of a criminal complaint at the preliminary hearing stage when that dismissal is based solely on an issue of law.

### A.

#### Standard of Review

 The Supreme Court grants review of decisions of the Idaho Court of Appeals in strictly limited circumstances. Idaho Appellate Rule 118(b) provides, "[g]ranting a petition for review from a final decision of the Court of Appeals is discretionary on the part of the Supreme Court, and will be granted only where there are special and important reasons." While this Court gives serious consideration to the views of the Court of Appeals when considering a case on review from that court, it reviews the district court's decision directly. *State v. Doe*, 144 Idaho 819, 821, 172 P.3d 1094, 1096 (2007). When reviewing the decision of the district court acting in its appellate capacity, this Court directly reviews the district court's decision. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). Thus, this Court considers whether the district court committed error with respect to the issues presented.

### B.

#### A Magistrate's Order Dismissing a Complaint at the Preliminary Hearing Stage is not Appealable

 Both parties argue that we should not consider whether *Ruiz* applies in this case

because the parties had not previously raised the issue. However, this Court has held that when an appeal is taken from a non-appealable order, it should be dismissed—if not by motion of one of the parties, by the Court itself—for lack of jurisdiction. *Highlands Dev. Corp. v. City of Boise*, 145 Idaho 958, 960, 188 P.3d 900, 902 (2008). The issue of whether an order is appealable cannot be waived, and was correctly raised by the Court of Appeals.

The Idaho Criminal Rules allow parties to appeal certain orders issued by a magistrate, including an "order granting a motion to dismiss a complaint." Idaho Crim. R. 54.1(c). When viewed in isolation from the other rules, this rule appears to allow a party to appeal *any* order dismissing a complaint. However, we have interpreted the rule more narrowly in order to give effect to the provisions of related rules. In *Ruiz*, we held that a magistrate's order dismissing a criminal complaint at the preliminary hearing stage is not appealable.

The magistrate in the *Ruiz* case dismissed a complaint alleging murder, battery, and assault after the preliminary hearing. *Id.* at 336–37, 678 P.2d at 1109–10. The State appealed to the district court, which dismissed the case citing Idaho Criminal Rule 54(a), which was later renumbered as Idaho Criminal Rule 54.1(c).[2] *Id.* In affirming the district court, we noted the fundamental importance of Rule 2(a) in construing any of the criminal rules, as it sets forth their purpose and construction. *Id.* at 337, 678 P.2d at 1110. "These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." Idaho Crim. R. 2(a). After reiterating the purpose behind the criminal rules, this Court examined two options for interpreting Rule 54.1(c). *Ruiz*, 106 Idaho at 337, 678 P.2d at 1110. First, we could interpret the rule to allow the State to

---

**2.** For ease of reference, this opinion will refer to the rule as it is currently numbered, Idaho Criminal Rule 54.1(c), although *Ruiz* literally cites

Idaho Criminal Rule 54(a), which no longer exists.

appeal from *any* order dismissing a complaint, which would "certainly result in unjustifiable delay," considering that the alleged crime in that case had occurred over two years prior. *Id.* Second, we could hold that so long as the State could re-file the complaint before another magistrate, it had no right to appeal a complaint's dismissal during the preliminary hearing phase. *Id.* at 338, 678 P.2d at 1111.

We adopted the second option, concluding it would "serve the interest of both the prosecution and the defense since ... it is clear that the prosecution can immediately thereafter initiate a new complaint before a different magistrate and insure the public's right to the speedy administration of justice."[3] *Id.* at 337, 678 P.2d at 1110. The Court noted that the first interpretation would "certainly result in unjustifiable delay" and that such delay "cannot but inure to the detriment of both the prosecution and defense insofar as the availability of or the recollection of witnesses are concerned." *Id.* The Court also expressed concern that the availability of an appeal would add to the appellate caseload of the district courts, requiring them to second guess the exercise of discretion by magistrate judges. We noted that other jurisdictions similarly disallow appeal from magistrates' orders of dismissal at the preliminary hearing stage. *Id.* at 338, 678 P.2d at 1111 (citing *State v. Maki*, 291 Minn. 427, 192 N.W.2d 811, 812 (1971)).[4]

Justice Bakes dissented, stating:

[T]here are times when it is important to have determined as a matter of law whether or not adequate evidence has been produced at a preliminary hearing in order to justify a finding of probable cause. It may well be that the magistrate's determination was based not so much upon the evidence

as the magistrate's interpretation of the law relating to that evidence.

*Ruiz*, 106 Idaho at 338, 678 P.2d at 1111 (Bakes, J., dissenting). He wrote that the prosecutor should be given the option of either appealing or re-filing. *Id.* at 339, 678 P.2d at 1112. He reasoned:

[I]f the dismissal results from a magistrate's legal determination that may be at odds with other magistrates in the district, it may well be that judicial economy in the long run will be served by having that determination reviewed by the district court in order to obtain a uniform ruling in that district, and perhaps ultimately by this Court in order to get a uniform interpretation of the law throughout the state.

*Id.*

Although neither of the parties contends *Ruiz* should be overruled, they both urge that we distinguish this case from *Ruiz* based on Justice Bakes' dissenting opinion. First, the State argues that *Ruiz* only holds that the State cannot appeal from the dismissal of a complaint at the preliminary hearing stage where the dismissal is based on an issue of fact. Since this case involves an issue of law, the State argues that the cases are distinguishable. Loomis, too, insists that the rule from *Ruiz* should be relaxed when applied to dismissals concerning issues of law. Although *Ruiz* does not directly discuss why the magistrate dismissed the complaint in that case, from what is stated one might infer that the dismissal was due to factual inadequacies.

Second, the State asserts that the policies behind the Idaho Criminal Rules do not support applying *Ruiz* to the present case. The State reiterates Idaho Criminal Rule 2(a), which establishes that the purposes behind the rules are to secure simplicity in proce-

3. The Court recognized that the State could file another complaint before another magistrate, since the only limitation on re-filing a complaint is that it cannot be done without good cause or in bad faith, and because double jeopardy was not implicated at the preliminary hearing stage. *Id.* at 338, 678 P.2d at 1111.

4. A then-existing Minnesota statute allowed the state to appeal "[f]rom an order, the substantive effect of which is to dismiss an indictment, information or complaint." Minn Stat.

§ 632.11(1)(1967). The Minnesota Supreme Court held: "[a]s we comprehend the uses of this provision, it is intended to give the state the right to appeal under circumstances where the order appealed from effectively defeats or prevents successful prosecutive action against the defendant.... An appellate court should not be required to review the issue of probable cause in every preliminary examination before the magistrates of this state." *Maki*, 192 N.W.2d at 812.

dure, fairness in administration and elimination of unjustifiable expense and delay. The State argues that under the current state of the law, magistrates can make legal findings that perpetually evade review. In response to these rulings, prosecutors must re-file complaints, which may result in accusations of bad faith or malicious prosecution. Additionally, each time a complaint is re-filed, criminal defendants are subject to re-arrest. According to the State, these outcomes do not promote the purposes behind Idaho's Criminal Rules. The State emphasizes that a magistrate may face the same legal question repeatedly and continually misinterpret the law, requiring the State to re-file numerous complaints dealing with the same criminal issue. Loomis, too, asserts that *Ruiz* should not prevent this Court from making uniform resolutions on critical pre-trial legal issues.

Third, the State argues that the rationale underlying *Ruiz* does not apply in this case. The State points out that in *Ruiz* the Court focused on how easily a prosecutor could re-file a new complaint before a different magistrate instead of appealing the dismissal. However, the State contends that 32 of Idaho's 44 counties—including Valley County where this case originated—have only one magistrate. In those counties, the State must disqualify the magistrate who dismissed the case and then secure an out-of-county magistrate within the twenty-one days in which the preliminary hearing must be held. According to the State, these procedural hurdles are substantial—especially in rural counties. Therefore, the State claims that the Court's basis for limiting Rule 54.1(c) in *Ruiz* was "illusory."

A review of the law in other jurisdictions reveals a split in how courts deal with dismissals of criminal complaints at the preliminary hearing stage. A number of states allow the prosecution to appeal a magistrate's dismissal at the preliminary hearing stage. These states include: California, *People v. Plumlee*, 166 Cal.App.4th 935, 83 Cal. Rptr.3d 172 (2008); Colorado, *People v. Johnson*, 167 P.3d 207 (Colo.Ct.App.2007); Kansas, *State v. Hernandez*, 40 Kan.App.2d 525, 193 P.3d 915 (2008); Utah, *State v.*

*Johnson*, 174 P.3d 654 (Utah Ct.App.2007); and Wisconsin, *State v. Wilson*, 235 Wis.2d 177, 612 N.W.2d 368 (Ct.App.2000). On the other hand, some states do not allow the prosecution to appeal a magistrate's dismissal at the preliminary hearing stage. Among those states are Minnesota, *State v. Maki*, 291 Minn. 427, 192 N.W.2d 811 (1971), and Georgia, *Magistrate Court of De Kalb County v. Fleming*, 284 Ga. 457, 667 S.E.2d 356 (2008).

■ After reviewing the parties' arguments and the cases from those jurisdictions, we are not persuaded to depart from our holding in *Ruiz*. The State has a remedy available to it after such a dismissal—refiling the complaint. We are not convinced that this remedy imposes substantial procedural hurdles to the State, regardless of the number of sitting magistrates in a county. Neither do we believe that one magistrate's mistaken legal ruling will subject a prosecutor to serious accusations of malicious prosecution. Allowing the State to appeal the dismissal of a complaint at the preliminary hearing stage would absolutely ensure that individual cases are not resolved in a timely and cost-effective manner. Similar to *Ruiz*, the alleged crime in this case occurred over three years ago. The appeal in this case has added three years to the processing of Loomis' case. The policy considerations leading the *Ruiz* court to adopt the no-appeal alternative are clearly apparent in this case. The better rule is to strictly prohibit the State's right to appeal from dismissals of criminal complaints at the preliminary hearing stage so as to prevent lengthy and expensive criminal proceedings and the squandering of public resources.

■ We also decline to review this case under our plenary power granted by article 5, § 9 of Idaho's Constitution. *See State v. Young*, 133 Idaho 177, 179, 983 P.2d 831, 833 (1999). Historically, we have rarely invoked our plenary power, and generally only do so to clarify important points in the construction of criminal rules and statutes which are likely to recur in the future. *Id.* In this case the parties have presented only speculation to indicate that the substantive issue in this case may recur.

Because this Court declines to depart from our holding in *Ruiz*, and declines to exercise our plenary appellate jurisdiction, we do not consider the remaining issues.

### III.

The district court's order is vacated.

Justices BURDICK, W. JONES, HORTON, and Justice Pro Tem WALTERS concur.