# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42486

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

DESIREE B. ELIASEN,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Boise, February 2015 Term

2015 Opinion No. 39

Filed: April 8, 2015

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Rick Carnaroli, Magistrate Judge. Hon. Stephen S. Dunn, District Judge.

District court decision upholding second degree stalking conviction is <u>affirmed.</u>

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Jessica Lorello, Deputy Attorney General, argued.

_____

J. JONES, Justice

This case comes to the Idaho Supreme Court from a petition for review of a Court of Appeals decision. This case arose after a jury found Desiree Eliasen guilty of misdemeanor stalking. Following the jury's verdict, Eliasen moved the magistrate court for a judgment of acquittal, which the magistrate court denied. Eliasen subsequently appealed to the Bannock County district court, asserting the State failed to prove the misdemeanor stalking elements beyond a reasonable doubt. Specifically, Eliasen argued the State failed to prove she engaged in "repeated acts" constituting a "course of conduct" under the statute. The district court upheld the jury's verdict and Eliasen appealed.

The Idaho Court of Appeals affirmed, and Eliasen then petitioned this Court for review. On review, Eliasen argues that there was insufficient evidence to show that she was guilty of misdemeanor stalking because she did not engage in separate instances of stalking. Instead,

1

Eliasen asserts that her conduct was one continuous act and therefore insufficient to satisfy the "course of conduct" element under the misdemeanor stalking statute. We affirm the district court's decision upholding the jury's verdict.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2008, Eliasen was charged with one count of second degree stalking under Idaho Code section 18-7906. The victim was a Pocatello police officer's wife. On Friday, September 26, 2008, the victim left her home with her three-year-old daughter to run errands, including dropping off a donation at the Pocatello Goodwill store and stopping at Fred Meyer. As the victim pulled out of her driveway, she noticed a brown Chevy Blazer stopped in the middle of the road, pointing east. The victim stopped in the driveway momentarily to wait for the Blazer to proceed down the street. When the Blazer did not move, the victim backed out of her driveway and headed west.

The victim then noticed that the Blazer made a U-turn and started to head west, back towards the victim's home. Once the victim realized that the Blazer went past her home without stopping, the victim stopped paying attention to the Blazer's location. The victim traveled several blocks and made four turns before reaching the Goodwill store. As the victim pulled into the Goodwill parking lot, she noticed the Blazer turn in behind her. The victim parked, exited the vehicle, and carried her donations to the door where a Goodwill employee took the donations from her. During this time, the Blazer parked in the Goodwill parking lot but no one exited the vehicle.

The victim got back into her vehicle and proceeded to exit the Goodwill parking lot, stopping at a traffic light. At that point, the victim became concerned because she noticed that the Blazer was directly behind her at the light. When the light changed, the victim turned and the Blazer followed her. Instead of proceeding to Fred Meyer as intended, the victim made a right hand turn and the Blazer followed. At this time the victim became frightened and attempted to call her husband. The first call was unsuccessful, but the victim successfully contacted her husband on the second try and they decided she should meet him at the police station. The victim also communicated the Blazer's license plate number to her husband, who discovered that the vehicle was registered to Eliasen. The victim made three more turns and the Blazer followed her through each turn. It was not until the victim turned in front of the police station that the Blazer ceased following her.

Eliasen was subsequently charged with second degree stalking. On December 12, 2008, Eliasen moved to dismiss, arguing there was insufficient evidence to support the stalking charge because she only engaged in a single incident of following the victim that did not rise to a "course of conduct" as required under Idaho Code section 18-7906. The magistrate court denied the motion, concluding that the conduct in the police report could be interpreted as two separate events constituting a course of conduct. Eliasen filed a renewed motion to dismiss, which the magistrate court also denied.

The case proceeded to a jury trial on April 10, 2009. After the State rested its case, Eliasen moved for a judgment of acquittal based on the State's presentation of evidence. Eliasen argued that the State failed to establish multiple events to make a prima facie case for stalking. The magistrate court denied the motion, determining that a prima facie case had been made, and that the jury would need to decide whether there were multiple acts to constitute a course of conduct. The magistrate court noted: "I believe the definition of course of conduct that's underneath the [stalking] statute can be as little as two acts until the Supreme Court or the Court of Appeals straightens me out on that view, that's the view of this Court."

The jury convicted Eliasen of second degree stalking and on April 28, 2008, the magistrate court imposed a jail sentence and a fine, suspended a portion of the jail time, and placed Eliasen on two years of probation.

Eliasen appealed to the district court. At issue on appeal was whether the State presented sufficient evidence at trial to prove every element of stalking beyond a reasonable doubt. The district court framed the issue as an appeal of Eliasen's I.C.R. 29 motion for acquittal. On August 6, 2013, the district court concluded that there was substantial and competent evidence to support the guilty verdict. The district court reasoned that under the terms of the statute, a minimum of two prohibited contacts must occur for the conduct to be considered stalking. At issue then, was the factual question of whether there was more than one instance of contact in this case.

The district court concluded "that a change in the nature of the conduct that a defendant in a stalking case engages in creates a sufficient break in the events to demonstrate a course of conduct through repeated acts of nonconsensual contact with the victim." Based on that reasoning, the district court found that there were four instances of prohibited conduct: (1) appearing at the victim's residence; (2) following the victim to Goodwill; (3) conducting surveillance at Goodwill; and (4) following the victim nearly the entire way to the police station.

Consequently, the district court concluded substantial and competent evidence supported the verdict and therefore affirmed Eliasen's conviction.

Eliasen appealed and the Court of Appeals affirmed. The Court of Appeals concluded that substantial and competent evidence supported the conclusion that Eliasen's actions constituted a course of conduct under the statute. The Court of Appeals reasoned that Eliasen's conduct constituted at least two instances of nonconsensual contact: (1) appearing at the victim's residence; and (2) conducting a U-turn and following the victim. Eliasen petitioned this Court for review.

## II.  ISSUE ON APPEAL

1.  Whether substantial and competent evidence supports the jury's verdict.

## III.  STANDARD OF REVIEW

On a petition for review, this Court gives serious consideration to the Court of Appeals' views, but directly reviews the lower court's decision. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). When a defendant appeals a decision the district court made while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision. *State v. Loomis*, 146 Idaho 700, 702, 201 P.3d 1277, 1279 (2009).

Under I.C.R. 29, the district court may set aside a jury verdict and enter judgment of acquittal "if the evidence is insufficient to sustain a conviction." That is because the Fourteenth Amendment of the United States Constitution guarantees the right to due process, and the U.S. Supreme Court has held that as a part of that due process, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *State v. Goggin*, 157 Idaho 1, 5, 333 P.3d 112, 116 (2014). However, "[a]ppellate review of the sufficiency of the evidence is limited in scope." *Id.*

The relevant inquiry is not whether this Court would find the defendant guilty beyond a reasonable doubt, but whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

Thus, "the only inquiry for this Court is whether there is substantial evidence upon which a reasonable jury could have found that the State met its burden of proving the essential

elements" of the charged crimes "beyond a reasonable doubt." *Id.* In other words, this Court reviews a trial court's ruling on a motion for acquittal for substantial evidence. *Goggin*, 157 Idaho at 4, 333 P.3d at 115. Evidence is substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009). In conducting its analysis, "the Court is required to consider the evidence in the light most favorable to the State," but will not substitute its "judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence." *Adamcik*, 152 Idaho at 460, 272 P.3d at 432. The Court exercises free review over questions of law. *Goggin*, 157 Idaho at 4, 333 P.3d at 115.

## IV. ANALYSIS

Eliasen asks this Court to vacate her second degree stalking conviction and remand with instructions to enter a judgment of acquittal because there was insufficient evidence at trial to support the jury's verdict.

Idaho Code section 18-7906 defines the crime of stalking in the second degree, or misdemeanor stalking, as "knowingly and maliciously . . . Engag[ing] in a *course of conduct* that seriously alarms, annoys or harasses the victim and is such as would cause a reasonable person substantial emotional distress. . . ." I.C. § 18-7906(1)(a) (emphasis added). The statute defines "course of conduct" as "repeated acts of nonconsensual contact involving the victim or a family or household member of the victim. . . ." I.C. § 18-7906(2)(a). The statute then defines "nonconsensual contact:"

> (c) "Nonconsensual contact" means any contact with the victim that is initiated or continued without the victim's consent, that is beyond the scope of the consent provided by the victim, or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued. "Nonconsensual contact" includes, but is not limited to:
>
>> (i) Following the victim or maintaining surveillance, including by electronic means, on the victim;
>>
>> (ii) Contacting the victim in a public place or on private property;
>>
>> (iii) Appearing at the workplace or residence of the victim;
>>
>> (iv) Entering onto or remaining on property owned, leased or occupied by the victim;

(v) Contacting the victim by telephone or causing the victim's telephone to ring repeatedly or continuously regardless of whether a conversation ensues;

(vi) Sending mail or electronic communications to the victim; or

(vii) Placing an object on, or delivering an object to, property owned, leased or occupied by the victim.

I.C § 18-7906(c). The parties agree that "repeated acts" requires more than one instance of contact. Thus, we must determine whether substantial and competent evidence supports the conclusion that Eliasen's conduct amounted to more than one instance of "nonconsensual contact."

The district court held that substantial, competent evidence supported the conclusion that Eliasen's actions constituted a course of conduct as defined under the statute. In so holding, the district court found that Idaho Code section 18-7906 was unambiguous and that "'repeated acts' can only be interpreted as meaning that one act is not enough." Instead, the district court reasoned, the statute's plain language provides that a "course of conduct" requires more than one instance of nonconsensual conduct. Applying the statute's plain language, the district court concluded that there was sufficient evidence for the jury to find that Eliasen engaged in more than one type of nonconsensual conduct. The district court reasoned that a change in the nature of the conduct "creates a sufficient break in the events to demonstrate a course of conduct through repeated acts of nonconsensual contact with the victim." Consequently, the district court identified four instances of prohibited conduct Eliasen engaged in: (1) appearing at the victim's residence; (2) following the victim to Goodwill; (3) conducting surveillance on the victim while the victim conducted her business at Goodwill; and (4) following the victim from the Goodwill store nearly the entire way to the police station. The district court concluded that these facts were substantial and competent evidence to support the conclusion that Eliasen engaged in repeated acts of nonconsensual contact with the victim as required under the statute.

Eliasen argues the district court's conclusion is contrary to the statute's plain language and would lead to absurd results. Eliasen argues that under the district court's interpretation of the statute, a witness' behavior in changing directions or pausing momentarily determines criminal liability, which is an absurd result. Eliasen contends that the natural reading of the statute is that there can only be a new act of nonconsensual contact when there is a break in the original nonconsensual contact, and that a change in the nature of the contact is irrelevant.

Eliasen argues that the evidence was not legally sufficient to support the jury's conclusion that she engaged in "repeated acts" constituting a "course of conduct" as required under Idaho Code section 19-7906. Rather, Eliasen asserts that she only engaged in a single occurrence of non-consensual contact between herself and the victim by following the victim to Goodwill, pausing briefly, and continuing to follow the victim out of the Goodwill parking lot, all without breaking off the nonconsensual contact. Thus, Eliasen argues this one continuous instance of nonconsensual contact cannot constitute a "course of conduct" as defined under the statute.

Viewing the evidence in the light most favorable to the State, we conclude there is substantial evidence in the record to support Eliasen's conviction. The interpretation of a statute "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (quoting *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)) (citations omitted). "We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 667, 851 P.2d 961, 963 (1993).

The statute's plain language identifies a non-exclusive list of conduct that constitutes "nonconsensual contact." That list includes following *or* maintaining surveillance of the victim, and appearing at the victim's residence. In this case, evidence from the record shows that Eliasen sat outside the victim's home, waited for the victim to pull out of her driveway, made a U-turn and followed the victim to the Goodwill store, and then continued to follow the victim for several blocks before turning off just before the police station. Based on this evidence, Eliasen committed at least two nonconsensual acts identified in the statute: first by appearing at the victim's residence, and second by following the victim to the Goodwill store. We hold this is substantial evidence for the jury to conclude that Eliasen engaged in repeated acts constituting a course of conduct under Idaho Code section 19-7906. Accordingly, the district court did not err in affirming the jury's verdict.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's decision upholding Eliasen's second degree stalking conviction.

Justices EISMANN and HORTON CONCUR.


BURDICK, Chief Justice, dissenting**.**

I respectfully dissent from the majority because I believe that Eliasen's actions amounted to a single course of conduct, rather than repeated acts of nonconsensual contact. I agree with the majority in that the statute identifies examples of conduct that may constitute stalking. However, I part ways with the majority as to the extent of the temporal break that is required before the conduct identified in the statute can amount to "repeated acts." Under the majority's analysis, an individual can be convicted of second degree stalking—an offense that carries with it a sentence of up to one year in jail or a $1,000 fine, or both—any time that individual parks outside the victim's house and immediately begins to follow the victim once the victim leaves the house. Therefore, even the most innocent conduct could amount to stalking under the majority's interpretation. I believe it is more appropriate to require two or more isolated instances of conduct with an appreciable and identifiable temporal break in between them before an individual's course of conduct can constitute "repeated acts of nonconsensual contact" under the statute.

Requiring a distinct and identifiable break in the defendant's conduct would provide juries with a workable rule that would be easier to apply than a rule requiring juries to dissect the nature of the defendant's conduct to determine whether it amounted to repeated acts. Accordingly, requiring isolated incidents with a temporal break in between would lead to more consistent and predictable results. Applying such a rule to these facts, had Eliasen appeared on a subsequent occasion and followed the victim again, even if it was a brief period after the first incident, it would have created an appreciable temporal break in her conduct sufficient to establish "repeated acts" under the statute.

However, that was not the case here. Instead, Eliasen's conduct is better viewed as one continuous and indivisible act of following the victim rather than two or more isolated incidents that had an appreciable and identifiable temporal break between them. Indeed, Eliasen parked outside the victim's house and immediately began following the victim after she pulled out of her driveway. At no point was there an appreciable temporal break in her contact with the victim.

Therefore, in my opinion, Eliasen's conduct is better viewed as a single instance of nonconsensual contact rather than repeated acts of nonconsensual contact.

Because I believe that "repeated acts" requires two or more isolated incidents of nonconsensual contact with an appreciable temporal break in between, I cannot join in the majority's analysis.

Justice W. JONES CONCURS.